IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

FRANCES M. ALANO,

              Plaintiff,

                                              Civ. Action No.
   v.                                     5:12-CV-1833 (GTS/DEP)

KATHLEEN SEBELIUS, *et al.*,

              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

FRANCES M. ALANO, *Pro Se*
c/o Joan Marie Alano, POA
39 Burt Avenue
Auburn, NY 13021

FOR DEFENDANTS:

HON. RICHARD HARTUNIAN          THOMAS SPINA, JR., ESQ.
United States Attorney for the          WILLIAM F. LARKIN, ESQ.
Northern District of New York          Assistant U.S. Attorneys
James T. Foley Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

## REPORT AND RECOMMENDATION

    This action was commenced by Joan Marie Alano on behalf of the plaintiff (her mother), Frances M. Alano, pursuant to her authority as Frances Alano's power of attorney. Because Joan Marie Alano is neither a

licensed attorney nor represented by counsel, she was previously advised by the court that she is required to either retain counsel to represent plaintiff, or, alternatively, plaintiff must proceed *pro se* on her own behalf in this action. The matter was stayed for a period of ninety days to allow plaintiff to retain counsel or advise the court she intends to proceed *pro se* on her own behalf. Although the allotted ninety-day period has now elapsed, there has been further response from either plaintiff or Joan Marie Alano. Accordingly, I now recommend that plaintiff's complaint be dismissed without prejudice.

I. BACKGROUND

This action was commenced on December 14, 2012. Compl. (Dkt. No. 1). Plaintiff's complaint is signed by "Joan Marie Alano, POA for Frances M. Alano," and explains that, because plaintiff has Alzheimer's disease, plaintiff's interests will be represented by her daughter, Joan Marie Alano ("JMA"), pursuant to JMA's authority as plaintiff's power of attorney and health care proxy. *Id.* at ¶ 6.

Generally, plaintiff's complaint challenges a final decision of the Secretary of Health and Human Services denying plaintiff's request for Medicare reimbursement in the amount of $5,188.85, which is the amount

2

allegedly billed to plaintiff by Community General Hospital. *See generally* Compl. (Dkt. No. 1). Plaintiff's complaint names as defendants Kathleen Sebelius, United States Secretary of Health and Human Services; Eric Holder, United States Attorney General; and Richard Hartunian, United States Attorney for the Northern District of New York. *Id.* at ¶¶ 3-5.

Following service and the filing of a notice of appearance by Assistant United States Attorney Thomas Spina, Jr., on behalf of all of the defendants, Dkt. Nos. 3-6, the court conducted a telephone conference to discuss the case on March 4, 2013. Text Minute Entry Dated Mar. 4, 2013. During that conference, I informed JMA that, because she is not a licensed attorney, she may not represent plaintiff *pro se. Id.* A text order was issued on that date staying the action for a period of ninety days to allow JMA an adequate opportunity to retain counsel for plaintiff. Text Order Dated Mar. 4, 2013 (Dkt. No. 9). That text order placed JMA and plaintiff on notice that, if there was no appearance by counsel on behalf of plaintiff by the expiration of the ninety-day period, I would issue a report to the assigned district judge recommending that plaintiff's complaint be dismissed. *Id.* There has been no further communication from plaintiff or JMA since the issuance of that text order. *See generally* Docket Sheet.

II.  DISCUSSION

By statue, parties appearing in a federal court may "plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654; *see* *Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 132 (2d Cir. 2009). "Although [section] 1654 thus recognizes that an individual generally has the right to proceed *pro se* with respect to his *own* claims or claims against him personally, the statute does not permit unlicensed laymen to represent anyone else other than themselves." *Berrios*, 564 F.3d at 132 (internal quotation marks omitted; emphasis in original). This rule recognizes that "a non-attorney creates unusual burdens" for his adversary, the court, as well as the party he intends to represent. *Berrios*, 564 F.3d at 133.

In this case, JMA purports to represent plaintiff, her mother, *pro se* pursuant to her authority as plaintiff's power of attorney. Although not explicitly stated, it is implied that plaintiff is incapable of representing herself *pro se* due to her diagnosis with Alzheimer's disease. Compl. (Dkt. No. 1) at ¶ 6. The fact that plaintiff may be unable to proceed *pro se*, even for reasons of incompetency, does not alleviate the requirement under section 1654 "that a non-attorney is not allowed to represent another

individual in federal court litigation without the assistance of counsel."

*Berrios*, 564 F.3d at 134; *see also Gray v. Hawthorne, N.Y. Facility*, No. 12-CV-1448, 2012 WL 1222344, at *1-2 (E.D.N.Y. Apr. 11, 2012) (precluding a mother from representing her minor daughter *pro se*); *Wright v. Szczur,* No. 11-CV-0140, 2012 WL 268283, at *1 (W.D.N.Y. Jan. 30, 2012) ("As an initial matter, to the extent that the [adult representatives] seek to vindicate their children's rights, as *pro se* litigants, they are barred from doing so without an attorney.") (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir. 1990)).[1]

Accordingly, because neither JMA nor plaintiff have secured counsel to represent plaintiff's claims in this matter, I recommend dismissal of this action without prejudice. *See Berrios*, 564 F.3d at 135 (remanding to the district court and instructing that, "[i]f counsel is not secured or appointed, the court may dismiss the complaint, but without prejudice").

III. <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff has failed to appear in this action either *pro se* or through counsel, despite having been informed of the need to do so and warned that the failure to comply with this requirement would result in dismissal of

---

[1] Copies of unreported decisions have been appended to this report for the convenience of the *pro se* litigant.

her complaint. Given this failure, the court has no alternative but to recommend dismissal of her complaint. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: June 21, 2013
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2012 WL 1222344 (E.D.N.Y.)

(Cite as: 2012 WL 1222344 (E.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,

E.D. New York.
Pamela M. GRAY and T.G., Plaintiffs,
v.
HAWTHORNE N.Y. FACILITY, Defendant.
No. 12–CV–1448 (SJF)(WDW).

April 11, 2012.

Pamela M. Gray, Bronx, NY, pro se.

Tameika Gray, bronx, NY, pro se.

### ORDER

FEUERSTEIN, District Judge.

**\*1** Before the Court is the complaint of pro se plaintiff Pamela M. Gray ("plaintiff"), brought on behalf of herself and her minor daughter, T.G. [FN1] The complaint is accompanied by an application to proceed *in forma pauperis.* Since the Court finds that plaintiff's financial position qualifies her to commence this action without prepayment of the Court's filing fee, plaintiff's application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(a)(1). However, for the reasons that follow, the complaint is *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

> FN1. The Guidelines for Compliance with the August 2, 2004 Amendments to the E–Government Act of 2002 require that minor children shall be identified in court filings only by his or her initials, rather than by his or her full name. *See* Administrative Order 2004–09. Accordingly, the Clerk of the Court is directed to so amend the caption to reflect only the initials of the plaintiff's minor daughter.

### I. Background

The instant complaint is the second *pro se* complaint filed by plaintiff on behalf of herself and T.G. The first was filed on August 15, 2011 against a defendant identified as "Mercy First." *See* Case No. 11–CV–3967. By order dated August 30, 2011 the undersigned *sua sponte* dismissed the complaint, noting that plaintiff, as a non-lawyer, could not bring a pro se action on behalf of her minor daughter in federal court. *See id.* at Docket Entry No. 3. The Court further noted that plaintiff had failed to state a plausible claim on her own behalf. *Id.* Plaintiff was directed to retain counsel for her daughter and to file an amended complaint within thirty (30) days from the date that the order was served upon her. *Id.* Plaintiff did not comply with this order, and on October 12, 2011, the Court *sua sponte* dismissed plaintiff's claims with prejudice and plaintiff's daughter's claims without prejudice. *Id.* at Docket Entry No. 4,

### II. The Instant Complaint

As she did previously, plaintiff seeks to assert pro se claims on behalf of herself and her minor daughter. The brief, handwritten complaint is largely illegible. As the Court can best discern, plaintiff's "statement of claim" alleges in its entirety: "At the [defendant] facility, [T.G.] was being mistreated out-of-town facility. I found Tuesday she was thru out and [indecipherable] some boy I never met." Complaint at 1. Plaintiff seeks to recover ten thousand dollars ($10,000) for "mistreat[ment] and medical bills I have." *Id.* at 2.

### III. Discussion

#### A. In *Forma Pauperis* Application

Upon review of plaintiff's declaration in support of her application to proceed in *forma pauperis,* the Court finds that plaintiff's financial status qualifies her to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a) (1). Therefore, plaintiff's request to proceed in *forma pauperis* is granted.

#### B. Capacity to Sue

"In the federal courts, 'parties may plead and conduct their own cases personally or by counsel.' " *Berrios v.*

Not Reported in F.Supp.2d, 2012 WL 1222344 (E.D.N.Y.)

(Cite as: 2012 WL 1222344 (E.D.N.Y.))

*N.Y. City Hous. Auth.,* 564 F.3d 130, 132 (2d Cir.2009) (quoting 28 U.S.C. § 1654). "[A]n individual generally has the right to proceed *pro se* with respect to his *own* claims or claims against him personally, [but] the statute does not permit unlicensed laymen to represent anyone else other than themselves." *Id.* (emphasis in original) (internal citations omitted).

***2** It is well settled in the Second Circuit that a non-attorney parent may not bring an action on behalf of his or her minor child. *See, e.g., Wenger v. Canastota Central School District,* 146 F.3d 123, 125 (2d Cir.1998). *overruled on other grounds by Winkelman v. Parma City School District,* 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007); *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) ("a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child"). The Court may not "make a merits determination of claims filed on behalf of a minor ... who is not properly represented." *Berrios,* 564 F.3d at 134. Even if no party raises this issue, it is the district court's responsibility to address it *sua sponte. Wenger,* 146 F.3d at 125.

Accordingly, the *pro se* plaintiff cannot represent her daughter in this case. Plaintiff is directed, within **thirty (30) days** from the date that this order is served upon her, to: (1) obtain counsel to represent her daughter, and (2) file an amended complaint in accordance with this order. If plaintiff fails to comply with this directive, the claims asserted on behalf of her daughter will be dismissed without prejudice.[FN2]

> FN2. The Court has considered whether to appoint *pro bono* counsel to represent T.G. in this action. The Court finds that such appointment is not warranted at this time because the present complaint does not allege a plausible claim. *See* Case No. 11–CV–3967 at Docket Entry No. 3.

C. Rule 8

Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that a pleading contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings must give "fair notice of what the ... claim is and the grounds upon which it rests" to enable the opposing party to answer and prepare for trial, and identify the nature of the case. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When a complaint fails to satisfy the Rule 8 pleading standard, a district court may dismiss the complaint on motion or *sua sponte. Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995).

Additionally, a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citations omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

Even liberally construed, plaintiff's *pro se* complaint does not meet the pleading requirements of Rule 8. Accordingly, the complaint is dismissed in its entirety and, unless an amended complaint is filed within **thirty (30) days** of the date this order is served upon plaintiff, any claims asserted on plaintiff's own behalf will be deemed dismissed with prejudice.

IV. Conclusion

***3** For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted. However, T.G.'s claims are *sua sponte* dismissed without prejudice unless counsel enters an appearance on her behalf and files an amended complaint in accordance with this order within thirty (30) days of the date that this order is served upon plaintiff. Plaintiff's claims brought on her own behalf are *sua sponte* dismissed with prejudice unless plaintiff files an amended complaint properly stating a claim against defendant within thirty (30) days from the date that this order is served upon her.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1222344 (E.D.N.Y.)

(Cite as: 2012 WL 1222344 (E.D.N.Y.))

is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

E.D.N.Y.,2012.

Gray v. Hawthorne N.Y. Facility
Not Reported in F.Supp.2d, 2012 WL 1222344 (E.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Paul G. WRIGHT and Theresa Wright, and their minor children E.W, M.W., N.W., and R.W., Plaintiffs,
v.
Hon. Margaret O. SZCZUR, et al., Defendants.
No. 11–CV–140S.

Jan. 30, 2012.

Paul G. Wright, Getzville, NY, pro se.

Theresa Wright, Getzville, NY, pro se.

E.W., pro se.

M.W., pro se.

N.W., pro se.

R.W., pro se.

Michael J. Russo, New York State Attorney General's Office, Joel J. Java, Jr., Roach, Brown, Mccarthy & Gruber, P.C., Brett P. Gliosca, Ricotta & Visco, Stephen A. Sharkey, Bond, Schoeneck & King, PLLC, Michael T. Hagelin, Hagelin Kent LLC, Gerard E. O'Connor, Lippman O'Connor, Anthony Girolamo Marecki, Richard Frederic Gioia, Kevin T. O'Brien, Elizabeth M. Bergen, Albert J. D'Aquino, Robert D. Barone, Joseph M. Schnitter, Lisa T. Sofferin, Daniel J. Sperrazza, Buffalo, NY, Keith Alan Raven, New York, NY, for Defendants.

### DECISION AND ORDER

WILLIAM M. SKRETNY, Chief Judge.
### I. INTRODUCTION
*1 *Pro se* Plaintiffs, Paul and Theresa Wright (the "Wrights"), on behalf of themselves and their minor children (the "Wright children"), bring this action, commenced February 15, 2011, against 58 defendants alleging various constitutional violations. Plaintiffs' complaint appears to request relief pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments. Additionally, the Wrights request relief pursuant to the Perjury Act, 18 U.S.C. § 1621, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1968, and the Health Information Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104–191, 110 Stat.1936 (1996). Finally, the Wrights assert intentional infliction of emotional distress claims. Presently before this Court are twelve motions to dismiss from all the defendants except Linda and David Beckinghausen, and Dr. Wonhoon Park.FN1,FN2 For the following reasons, all motions to dismiss are granted except those of the individual Erie County Defendants.

> FN1. For a review and a description of the defendants in this action, see the W rights' Amended Complaint at pp. 4–5 (Docket No. 71.)

> FN2. There are three other motions before this Court (Docket Nos. 80, 88, 89) which, by virtue of other rulings, will be dismissed as moot.

As an initial matter, to the extent that the Wrights seek to vindicate their children's rights, as *pro se* litigants, they are barred from doing so without an attorney. *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 297 F.3d 195, 201 (2d Cir.2002) (noting that "[i]n this Circuit, a non-attorney parent is precluded from representing his or her child in federal court" and that the district court should have ordered *pro se* plaintiff to obtain counsel in the district court). This rule is unaltered by Fed R. Civ. P. 17(c)(2). *Berrios v. N.Y.C. Housing Auth.,* 564 F.3d 130, 134 (2d Cir.2009). Indeed, this court is precluded from making a determination on the merits of the children's claims. *Id.* ("What the court may not properly do, however, is make a merits determination of claims filed on behalf of a minor

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

or incompetent person who is not properly represented.").

Consequently, any claims involving the rights of the Wright children will be dismissed without prejudice and the Wrights will be permitted to re-plead those claims in the event they secure attorney representation.

## II. BACKGROUND

### A. Facts[FN3]

> FN3. Plaintiffs have provided meager factual detail concerning the events about which they complain. There is no coherent pattern or timeline of events. Instead, their complaint consists largely of scattered accusations aimed at numerous and various defendants. Despite this, under the necessary liberal reading, the Wrights have stated one cognizable claim, discussed *infra*.

The Wrights have four children, referred to in this litigation as "N.W.," "E.W.," M.W.," and "R.W." (Amended Complaint p. 1; Docket No. 71.) At some point in early 2008, New York's Office of Children and Family Services received a call about a problem at the Wright household, presumably involving the level of care that the Wrights were providing to their children.[FN4] (*Id.* ¶ 1.) This began a series of events about which the Wrights allege constitutional violations against every person and agency involved, implicating nearly the entire Bill of Rights. Their allegations can roughly be organized into four categories, a description of each follows.

> FN4. Plaintiffs do not detail the specifics of the call.

### 1. Medical Information

\*2 The first three pages of Plaintiffs' complaint concern allegations that various defendants unlawfully shared and disseminated the Wright's medical information in violation of HIPAA. (*Id.* ¶¶ 2–10.) Plaintiffs allege that this information was then used against them in subsequent custody proceedings. (*Id.*) Specifically, Plaintiffs allege that Annmarie Albanese, Dr. Barbara Stouter, Dr. James Panzeralla, Dr. David James, Dr. Cheryl Neely, Dr. Corstiaan Brass, Sharon Novak, Marylou Weaver, Sandie Yeater, Dr. Marybeth Lopat–Winter, Dr. Justin Kanaley, Jennifer Daege, Edward Surowiec Dr. Wonhoon Park, and Dr. McCormack, Charles Gallagher, Christopher Anderson, James Brown, Phil Pawlowski, and Emil Cappelli all engaged in acts prohibited by HIPAA.

### 2. Children's Removal

The Wrights allege that around February 15, 2008, Annmarie Albanese, a CPS caseworker, came to the Wrights' home and sought to enter. (Complaint ¶ 13.) When Paul Wright denied her access to his home, she threatened to return with the police and remove the children. (*Id.*) Plaintiffs further allege that eventually, by forgery and fabrication,[FN5] Albanese applied for and received a warrant from Erie County Family Court Judge Margaret Szczur, which authorized the removal the Wright children from their home. (*Id.* ¶ 14.) They also claim that Judge Szczur, who apparently ordered the removal of the children based on neglect, is liable because her rulings were unnecessarily harsh and were carried out absent a pre-deprivation hearing. (*Id.* ¶¶ 15–17.) They also bring claims against the New York State Court Appellate Division, Fourth Department, which apparently affirmed Judge Szczur's order. Further, Plaintiffs implicate Sam Endich,[FN6] Christopher Anderson, Andrew McLaren, and Gateway Longview, all of whom Plaintiffs believe were involved in the removal or detention of their children.

> FN5. They assert that Albanese later admitted to presenting false testimony in her application to the Judge. (*Id.* ¶ 3.)

> FN6. The Wrights also allege that Sam End ich filed a false police report concerning an interaction he had with Paul Wright in March or April 2008.

### 3. Foster Parents

It appears that the Wright children were eventually split up and sent to two separate homes. According to the complaint, Janet Kelly was the foster parent for E.W. and M.W., while David and Linda Beckinghausen were the foster parents for N.W. and R.W. (*Id.* ¶¶ 27–30.) Plaintiffs allege that Janet Kelly mistreated E.W. and M.W., at one point screaming and shaking E.W. and at another point locking M.W. in a small room for over four hours. (*Id.* ¶ 27–28.) As for the Beckinghausens, Plaintiffs allege that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

they improperly transferred N.W. from his school. (*Id.* ¶ 30.) Plaintiffs claim that both Janet Kelly and the Beckinghausens told the Wright children that they had "already been adopted," which was apparently untrue. (*Id.* ¶¶ 31, 33.)

**4. The Wrights' Medical Treatment**

Finally, the Wrights allege claims arising from perceived mistreatment by various medical professionals. According to the complaint, on February 14, 2008, Theresa Wright went to Millard Fillmore Suburban's emergency room complaining of stomach pain. (*Id.* ¶ 4.) Once admitted, Dr. David James allegedly neglected to examine her abdominal area and instead examined only her foot. He then told her, "CPS is looking for you, you're going to Buffalo General [Hospital] for psychiatric evaluation. (*Id.*) It is unclear whether Theresa ever went to Buffalo General, as Plaintiffs set forth no additional facts, claiming only that Dr. James and Dr. Cheryl Neely later falsified "a certificate." (*Id.* ¶¶ 4–5.)

**\*3** Unrelatedly, in March of 2008, Drs. Jack Coyne and Deborah Dee, working for the Child Advocacy Center allegedly examined all of the Wright children. (*Id.* ¶ 19.) Each of them complained of stomach pain, but, according to Plaintiffs, they were ignored and told the pain "was in their head." (*Id.*) At several points in early 2008, Albanese, Carolyn Isbrandt, and Janet Kelly all reacted the same way to the children's complaints, disregarding them and telling the children the pain was only "in their head." (*Id.* ¶¶ 22–25.)

### III. DISCUSSION

**A. Legal Standard**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed.R.Civ.P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1945 (quoting *Twombly,* 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. *Iqbal,* 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* at 1950; Fed.R.Civ.P. 8(a)(2). Wellpleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. *Iqbal,* 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. *See Iqbal,* 129 S.Ct. at 1950. Second, well-pleaded, nonconclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." *Id.*

**B. Federal Claims**[FN7]

> FN7. To the extent that the Wrights assert claims under the Fifth, Sixth, Seventh, Eighth, or Ninth Amendments, this Court finds no allegations in the Complaint that could plausibly fall in the ambit of the protections outlined in those amendments. They are therefore dismissed as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

against all Defendants without further discussion.

**\*4** *Pro se* litigants, like the Wrights, are entitled to broad consideration of their submissions. Federal courts routinely read pro se submissions liberally, and interpret them to raise the strongest arguments that they suggest. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This Court has considered the Wrights' submissions accordingly.

Because the analysis of some of the Wrights' claims applies equally to each defendant, those claims will be discussed first, followed by analysis applicable to specific defendants.

**1. Defendants at Large**

*i. HIPAA*

Its clear that the Wrights believe that several defendants violated medical privacy regulations found in HIPAA. However, enforcement of the HIPAA statute is limited to the Secretary of Health and Human Services. *See* Pub.L. No. 104–191, 110 Stat.1936 (1996); *see also Nat'l Abortion Fed'n v. Ashcroft,* No. 03 Civ. 8695, 2004 WL 555701, \*2 (S.D.N.Y. Mar. 19, 2004). HIPAA does not provide for a private right of action. *Ames v. Group Health Inc.,* 553 F.Supp.2d 187, 192 (E.D.N.Y.2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information"); *Bayne v. Health Ins. Portability & Accountability Act,* No. 11–CV0321, 2012 WL 119617, at \*6 (E.D.N.Y. Jan 17., 2012). As such, the Wrights' HIPAA claims are dismissed as against all defendants.

*ii. Perjury*

Equally clear is the Wrights' belief that several defendants, specifically individual Erie County Defendants, committed perjury during the events leading to and during (what appears to be) the Wrights' custody hearing. This claim is also not actionable. 18 U.S.C. § 1621, the federal perjury statute, like the HIPAA statute, does not create a private right of action. *See, e.g., Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir.2002) ("We affirm the district court's dismissal of claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action."). These claims are therefore dismissed as against all defendants.

*iii. RICO*

The Wrights assert throughout the complaint that they are entitled to relief under 18 U.S.C. §§ 1962 and 1964. "To state a RICO claim, a plaintiff must plead (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. In addition, a plaintiff must plead injury to business or property as a result of the RICO violation." [FN8] *Anatian v. Coutts Bank (Switz.) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

> FN8. Racketeering activity is defined at 18 U.S.C.1961(1).

Even under a liberal reading of the complaint, the Wrights do not allege that any defendant engaged in "conduct of an enterprise." *See id.* Further, RICO only provides recovery for injury to business or property; it does not provide recovery for physical or emotional injuries. *Williams v. Dow Chemical Co.,* 255 F.Supp.2d 219, 225 (S.D.N.Y.2003); *see also Le Paw v. BAT Indus. P.L.C.,* No. 96 Civ. 4373, 1997 WL 242132, at \*2 (E.D.N.Y. Mar.6, 1997) ("In other words, claims for personal injuries or emotional distress are not cognizable under RICO."). The Wrights, however, allege only that they suffered personal injuries, including emotional distress and the deprivation of constitutional rights. Thus, the Wrights have not made out a *prima facie* RICO case, and their claims under this statute must be dismissed as against all defendants.

*iv. 42 U.S.C. § 1983*

**\*5** The gravamen of the Wrights' claims are brought pursuant to 42 U.S.C. § 1983 for perceived constitutional violations. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights

conferred elsewhere in the federal statutes and Constitution. *See Graham v. Connor,* 490 U.S. 386, 393–94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).

Thus, to establish liability under § 1983, the plaintiff must satisfy two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). " § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

A court assessing the viability of a § 1983 claim must first determine whether the actions alleged were committed under color of state law. *Carlos v. Santos,* 123 F.3d 61, 65 (2d Cir.1997). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)).

Despite the fact that many defendants are private actors, the Wrights assert that nearly everyone named in their complaint was acting under color of state law. Mere conclusory labels, however, are insufficient under *Iqbal* and *Twombly* to survive a motion to dismiss. Instead, the Wrights must demonstrate, through factual allegations either that: (1) there was a "close nexus" between the private and state actors, (2) the private activity was a product of "state compulsion," or (3) the private actors performed a public function. *Turturro v. Cont'l Airlines,* 334 F.Supp.2d 383, 394 (S.D.N.Y.2004) (citing *Okunieff v. Rosenberg,* 996 F.Supp. 343, 347–57 (S.D.N.Y.1998), *aff'd,* 166 F.3d 507 (2d Cir.1999) (per curiam)).

The Wrights fail to meet any of these tests. It is evident that the Wrights feel that they and their children were at the whim of a system over which they had no control and that somehow all these defendants acted in concert in wronging them. Their allegations, however, are simply too vague and indefinite. The Wrights provide no facts that could conceivably link the private actors to a state actor or function. Rather, they merely label private actors as "acting under state law" and allege various conspiracies without supporting facts. "Plaintiffs['] complaint offers no explanation of how [defendants] allegedly conspired with the state defendants, and provides no factual basis whatsoever to support [their] conspiracy theory." *Mooney v. County of Monroe,* 508 F.Supp.2d 222, 224 (W.D.N.Y.2007). As the Second Circuit held: "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002).

*\*6* Therefore, the motions to dismiss filed by the following private defendants regarding claims under § 1983 are granted: Buffalo General Hospital, Kaleida Health, Millard Fillmore Suburban Hospital, Buffalo Medical Group, Corstiaan Brass, James Panzarella, Family Care Medicine, Jennifer Daege, [FN9] Rite–Aid Pharmacies, Edward Surowiec, Amherst Health Center, Amherst University Health Center, Lifetime Medical Group, Barbara Stouter, Justin Kanaley, Marybeth Lopat–Winter, Sharon Novak, Tonawanda Pediatric, Marylou Weaver, Sandie Yeater, Robert McCormack, David James, Cheryl Neely, Cheri Carol–Alvarez, Lauren Dombrowski, Michelle Federowicz. Gateway Longview, Horizons Health Services, Carolyn Isbrandt, Andrew McLaren, Susan Seawood, Chrisy Smith, Janet Kelly,[FN10] and Stacey Sowinski.

> FN9. The W rights do not mention Jennifer Daege in their complaint.
>
> FN10. Because Janet Kelly is dismissed from this suit, Sam Endich's motion to dismiss her counterclaim (Docket No. 80) is denied as moot.

**2. Specific Defendants**

*i. Erie County Defendants*[FN11]

> FN11. This group consists of the Erie County Department of Social Services, Child Protection

Services, Charles Gallagher, Annmarie Albanese, Christopher Anderson, James Brown, Yvonne Rychcik, Phil Pawlowski, and Emil Cappelli.

The crux of the Wrights' claims against the Erie County Defendants is that they fraudulently removed their children from their custody. The Defendants argue that this Court lacks jurisdiction to hear those claims under the *Rooker–Feldman* doctrine, which precludes federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 483, n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." *Marden v. Dinin,* 22 F.Supp.2d 180, 185 (S.D.N.Y.1998) (quoting *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)).

While the Wrights are certainly displeased with the result of the Family Court and New York State Court proceedings, their allegations also suggest that actions leading up to those proceedings violated their custodial rights. As such, the Wrights do not seek to appeal or call into question the Family Court decision so much as they seek to vindicate rights they believe were violated before the proceedings occurred. *Rooker–Feldman* does not divest this Court of jurisdiction over those claims. *See McKithen v. Brown,* 481 F.3d 89, 98 (2d Cir.2007) ("[A] party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been "caused by" those proceedings."); *Green v. Mattingly,* 585 F.3d 97 (2d Cir.2009) (finding *Rooker–Feldman* inapplicable and noting that "[t]he situation would have been different if the Family Court had entered a final order of disposition permanently removing plaintiff's child from her custody *and plaintiff had brought this action seeking the return of her child"* ) (emphasis added).[FN12]

> FN12. What is more, for *Rooker–Feldman* to apply, the Wrights must have had a full and fair opportunity to litigate these issues in Family Court. *See, e.g., Velez v. Reynolds,* 325 F.Supp.2d 293, 309 (S.D.N.Y.2004). At this stage of the proceedings, this Court cannot determine what opportunities the Wrights had in that respect.

With jurisdiction proper, Defendants next argue that the Wrights have failed to state a claim under Fed.R.Civ.P. 12(b)(6). This Court has found three plausible claims against the Erie County Defendants: the Wrights allege that Pawlowski made a "false report" of "suspected neglect." (Complaint ¶ 37); that Albanese "with the assistance of" Gallagher, Anderson, Brown, Pawlowski, and Cappelli "filed an application for a warrant that contained numerous false statements claiming 'imminent danger' " (*Id.* ¶ 13); and that Albanese "knowingly presented false information" in her application for a warrant to seize the Wright children (*Id.* ¶ 3).[FN13] Although pled inartfully and in a rather conclusory fashion, considering the Wrights' *pro se* status, such allegations state a valid claim under the Fourteenth Amendment's Due Process Clause. *See Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991) ("[T]he Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel.").

> FN13. Unless there was more than one warrant, the third allegation seems duplicative of the second.

**\*7** Parents "have a constitutionally protected liberty interest in the care, custody, and management of their children, and family members have a fundamental right under the Fourteenth Amendment to stay together." *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999). The Supreme Court has held that "[t]he liberty interest ... of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Kia P. v. McIntyre,* 235 F.3d 749 (2d Cir.2000) (finding that the liberty interest of parent and child in continued care and companionship has both procedural as well as substantive elements).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

These rights, however, are not absolute. The Second Circuit has recognized that the "constitutionally protected interest in ... family integrity" must be "counterbalanced by the compelling governmental interest in the protection of minor children." *Southerland v. City of New York,* 652 F.3d 209, 230 (2d. Cir.2011). "Because the law contemplates a careful balancing of interests, a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." *Id.*

At this stage of the litigation, this Court cannot say whether the Wrights' liberty interest in the continued care of their children was violated. The Wrights claim that the individual Erie County Defendants improperly removed their children from their care. Lacking the necessary information to determine whether this removal was proper under the law, that is, whether there was a reasonable basis for thinking that the children were neglected, this Court cannot dismiss this claim against the individual Erie County Defendants.

Further, the Wrights have alleged the warrant application was procured through perjured testimony. Because "perjury by a[ ] [children services] caseworker to effectuate an otherwise improper removal may constitute a violation of procedural due process," *Green ex rel. T.C. v. Mattingly,* No. 07–CV–1790 (ENV), 2010 WL 3824119, at *9 (E.D.N.Y. Sept.23 2010) dismissal is unwarranted. *See Chi Chao Yuan v. Rivera,* 48 F.Supp.2d 335, 346 (S.D.N.Y.1999) ("The right to a fair tribunal includes the right to a proceeding free of perjury by state officials"); *E.D. v. Tuffarelli,* 692 F.Supp.2d 347, 359 (S.D.N.Y.2010) (listing "manufacturing evidence" and "ignoring exculpatory information" as the sort of "obvious extremes" against which caseworkers are not protected); *Morrison v. Lefevre,* 592 F.Supp. 1052, 1073 (S.D.N.Y.1984) ( "The introduction of false evidence in itself violates the due process clause.").

The Erie County Defendants argue that they are entitled to qualified immunity, which protects officials from § 1983 liability if their actions (1) did not violate clearly established law or (2) were objectively reasonable. *See Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999).

However, if the Wrights establish that these Defendants violated their constitutional right to care for their children, they are not entitled to this immunity for two reasons. First, this law is clearly established. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (noting Supreme Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"). Second, without more facts, this Court cannot conclude that it was objectively reasonable for these Defendants to believe that their conduct did not violate the Wrights' rights. It is alleged that they misrepresented and forged documents and testimony. Such acts are not objectively reasonable; Defendants are therefore not entitled to the protections of qualified immunity at this time.

**\*8** However, the Wrights' claims cannot survive against the Erie County Department of Social Services and Child Protection Services; they must be dismissed under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may be held liable for damages under § 1983 only when execution of government policy or custom, or the failure to train, supervise, or discipline its employees inflicts the injury in question. *Id.* The Wrights allege no facts supporting such a policy, custom, or failure to supervise. Dismissal is therefore warranted.

The Wrights also contend that the Erie County Defendants violated the Fourth Amendment right against unreasonable searches and seizures in the removal of their children. Although the removal of a child may be construed as a "seizure" under the Fourth Amendment, *see Tenenbaum,* 193 F.3d at 602, and therefore may give rise to a § 1983 action, it can only be "brought on behalf of a child by a parent" and cannot be brought vicariously on behalf of the parents themselves. *E.D. ex rel. V.D. v.Tuffarelli,* 692 F.Supp.2d 347, 366 (S.D.N.Y.2010); *see also Alderman v. United States,* 394 U.S. 165, 174, 89, S.Ct. 961, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Because the Wrights, as *pro se* litigants, cannot represent the interests of their children, this claim is dismissed without prejudice. *Chueng,* 906 F.2d at 61.

*ii. Sam Endich*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

Sam Endich is a counselor at the Wright children's school, Heim Elementary.[FN14] (Amended Complaint, p. 4.) The Wrights claim that Sam Endich (1) allowed certain CPS personnel to conduct interviews with the Wright children, (2) filed a false police report against Paul Wright, and (3) assisted in the seizure of the Wright children from Heim Elementary. The Wrights assert that they are entitled to relief under § 1983.

> FN14. Endich does not argue that he is a private actor.

The Wrights first and second allegations fail to implicate constitutional concerns. First, "as a matter of law ... no constitutional rights [are] implicated in the interview of [a minor child] at school without [the] parents' knowledge or consent." *Cornigans v. Mark Country Day Sch.,* No. CV 03–1414, 2006 WL 3950335 at *6 (E.D.N.Y. July 12, 2006).[FN15] Second, although the filing of a false arrest report can constitute an unlawful seizure under the Fourth Amendment, *see Paul v. Bank of Am. Corp.,* No. 09–CV–1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011)), the Wrights do not allege that Paul was ever arrested pursuant to this report, foreclosing such a claim.

> FN15. Even if the interviews could be construed as a Fourth Amendment false arrest claim, it would be the children's claim, not their parents.

While the third allegation, that Endich "assisted" the CPS caseworkers removal of the children from their school, may state a Due Process claim akin to that discussed above, the Wrights admit that the caseworkers removed the children pursuant to a warrant. (Complaint ¶ 17.) Acting under this understanding, Endich's conduct was objectively reasonable and he is therefore entitled to the protections of qualified immunity. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998) (qualified immunity appropriate where it was objectively reasonable for official to believe his acts did not violate clearly established rights). Therefore, his motion to dismiss is granted.

*iii. Child and Adolescent Treatment Services, Inc.*

**\*9** Although served with a summons and complaint, the Wrights allege no claims against Child and Adolescent Treatment Services, Inc. ("Treatment Services"). They only allege that Dr. Jack Coyne and Deborah Dee worked for the "Child Advocacy Center, Erie County Dept. Of Social Services" and, in that capacity, violated their children's constitutional rights. Treatment Services denies that it employs Dr. Coyne or Dee. In any event, even if this claim is proper as against Treatment Services, it is dismissed without prejudice for the same reasons as discussed immediately below.

*iv. Dr. Jack Coyne, M.D., and Deborah Dee, N.P.*

The Wrights allege that Dr. Coyne and Dee acted with deliberate indifference towards their children when they ignored the Wright children's complaints about stomach pain. But, these are alleged violations of their children's rights. The Wrights, as *pro se* plaintiffs, cannot bring an action on behalf of their children. Therefore, this Court cannot address these claims at this time. *Cheung,* 906 F.2d at 61. As such, claims against Dr. Coyne and Dee are dismissed without prejudice.

*v. Judicial Defendants*

The Wrights also bring this suit against Family Court Judge Margaret Szczur, several justices of the Fourth Department, and the Family Court and Fourth Department themselves. These claims are dismissed. The allegations against the judges all fall within their official capacity. State court judges, including those sitting on Family Court, are absolutely immune from damage suits pursuant to § 1983. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Dorman v. Higgins,* 821 F.2d 133, 137 (2nd Cir.1987); *Fariello v. Rodriguez,* 148 F.R.D. 670, 678 (E.D.N.Y.1993) (applying absolute immunity to Family Court judges).

The courts themselves are also immune from suit under the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Mathis v. Clerk of the First Dep't,* 631 F.Supp. 232, 234 (S.D.N.Y.1986) ("The Appellate Division, a state court, is ... immune from suit by virtue of the Eleventh Amendment). These Defendants' motion to dismiss is therefore granted.[FN16]

> FN16. Insofar as the Wrights seek to overturn

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

### C. State Claims

The Wrights only cognizable state-law claim is one for intentional infliction of emotional distress. However, under New York law, claims for intentional infliction of emotional distress are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3); *Patterson v. Balsamico,* 440 F.3d 104, 112 (2d Cir.2006). The Wrights filed this suit on February 15, 2011, and their claim accrued no later than October 2009—the latest date that the Wrights allege such a tortious act. Accordingly, to the extent that these claims are asserted on behalf of the parents themselves, they are time-barred and dismissed. The Wrights also allege that their children were denied adequate medical care and unlawfully imprisoned, but those claims, in addition to any children's emotional distress claims, are dismissed without prejudice for the reasons previously articulated.

## IV. CONCLUSION

***10** All told, the Wrights can proceed with one claim against one set of Defendants: a substantive and procedural Due Process violation against the individual Erie County Defendants, alleging that they improperly procured a warrant and illegally removed their children from their custody. For the foregoing reasons, all other motions to dismiss, including that of the municipal Erie County Defendants, are granted. Claims brought on behalf of the Wright children are dismissed without prejudice.

## V. ORDERS

IT HEREBY IS ORDERED, that Amherst Health Center, Amherst University Health Center, Jack Coyne, Lifetime Health Medical Group, and Barbara Stouter's (Docket No. 98) Motion to Dismiss is GRANTED.

FURTHER, that Buffalo General Hospital, Deborah Dee, Kaleida Health, and Millard Filmore Suburban Hospital's Motion to Dismiss (Docket No. 99) is GRANTED.

FURTHER, that Jennifer Daege, Rite Aid Pharmacies, and Edward Surowiec's Motion to Dismiss (Docket No. 100) is GRANTED.

FURTHER, that Cheri Carrol–Alvarez, Lauren Dombrowski, Michelle Federowicz, Gateway Longview, Horizons Health Services, Carolyn Isbrandt, Andrew J. McLaren, Susan Seawood, Chrisy Smith, and Stacey Sowinski's Motion to Dismiss (Docket No. 101) is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss (Docket No. 102) is GRANTED.

FURTHER, that Janet Kelly's Motion to Dismiss (Docket No. 103) is GRANTED.

FURTHER, that Child Advocacy Center Inc.'s Motion to Dismiss (Docket No. 105) is GRANTED.

FURTHER, that David James, Robert McCormack, Cheryl Neely's Motion to Dismiss (Docket No. 106) is GRANTED.

FURTHER, that Corstiaan Brass, Buffalo Medical Group, Family Care Medicine, and James Panzarella's Motion to Dismiss (Docket No. 107) is GRANTED.

FURTHER, that Annmarie Albanese, Christopher Anderson, James Brown, James Brown, Emil Cappelli, Child Protection Services, Erie County Dept. of Social Services, Charles Gallagher, Phil Pawlowski, and Yvonne Rychcik's Motion to Dismiss (Docket No. 109) is GRANTED with respect to the municipal defendants and DENIED with respect to the individual Defendants.

FURTHER, that Justin Kanaley, Marybeth Lopat–Winter, Sandie Yeater, Sharon Novak, Tonawanda Pediatric, and Marylou Weaver's Motion to Dismiss (Docket No. 110) is GRANTED.

FURTHER, that JJ Centra, Erie County Family Court, P.J. Hurlbutt, Salvatore Martoche, New York Appellate Division, Fourth Department, Henry Scudder, Nancy Smith, and Margaret O. Szczur's Motion to Dismiss (Docket No. 123) is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss Janet Kelly's Counterclaim (Docket No. 80) is DENIED as moot.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

either of the these courts' rulings, such a claim would be barred by *Rooker–Feldman.*

Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)

(Cite as: 2012 WL 268283 (W.D.N.Y.))

FURTHER, that Plaintiffs' Motion to Attach a Memorandum of Law (Docket No. 88) is DENIED.

FURTHER, that Janet Kelly's Motion to Strike Answer (Docket No. 89) is DENIED as moot.

SO ORDERED.

W.D.N.Y.,2012.

Wright v. Szczur
Not Reported in F.Supp.2d, 2012 WL 268283 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.